Bradbury, J.
The petition contains averments tending to show a purpose on a part of the plaintiff *551 below to proceed under chapter 5, title. 1, division 7 of the Revised Statutes, providing for the dissolution of corporations.. The subsequent proceeding, however, did not accord with those prescribed by the statute so that the inference to be drawn from the whole record is that those plaintiffs sought to invoke not the provision of that statute, but the powers of a court of equity as prescribed and regulated by the general principles of equity jurisprudence. What their ultimate purpose was is not entirely clear; but'the petition itself, together with the relations that the plaintiffs below bore to the. corporation and the proceedings had subsequently, strongly suggest that instead of intending to procure a dissolution of the corporation and the distribution of its assets to those entitled to receive them, the real purpose of the plaintiffs was to continue the business of the concern indefinitely, freed from annoyance by creditors, in the hope of retrieving its broken fortune. And by the appointment of a receiver they did in fact succeed in withdrawing the entire assets of the corporation from seizure at the hands of its creditors.
While the appointment of a receiver for an insolvent private corporation, may be and, doubtless, often is a beneficent remedy for all interested parties, where a tona fide winding up of affairs, and distribution of its assets to those who show a right to them, is the object sought and steadily kept in view, yet, on the other hand, to employ that extraordinary remedy as a means by which to indefinitely prolong by aid of a friendly receiver, the substantial control of the managing body of an insolvent private corporation over its assets and business, can be justified, in the absence of statutory authority, by circumstances, only, if there *552 can be any, that most unequivocally demand such action, or by- the consent of all parties in interest.
In the case under consideration the business and assets of the corporation were given' over to a receiver, chosen by its board of directors, on the 23rd day of January, 1890, and the business continued under his ostensible management, subject to the direction of the court, until the 14th day of the following October. Whether this policy should be continued indefinitely, or whether the affairs of the concern should be brought to a termination within a reasonable time, and its assets distributed, was a question affecting each of its creditors and stockholders. A system of jurisprudence which would deny a hearing- to a party so'interested might justly be branded as arbitrary if not oppressive. The defendant in error is a creditor of the corporation and waited nearly nine months after the assets of the concern ' and the management of its business had passed into the hands of the receiver, when becoming- dissatisfied with the methods pursued in ostensibly closing up its affairs it applied to the court in which the proceedings were pending for leave to be made a party thereto and to file an answer therein, which leave being granted it did on the 13th day of November, 1890, file the answer, or cross-petition herein before -set forth in full.. A demurrer was interposed to this cross-petition, one ground of which was that, it did not set forth a counterclaim of the character specified in section 5Ó72, Revised Statutes.
That section (5072) provides that “a counterclaim” must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising1 out of the contract or transaction set forth in the *553 petition as the foundation of the plaintiffs’ claim, or connected with'the .subject of the action.”
The first count of the answer sets forth facts which show among other things that the insolvent corporation is indebted to the cross petitioner. That some of the plaintiffs below, who held stock and bonds of the concern, were liable to it for considerable sums of money on account of the methods by which such stock and bonds had been sold or issued to them, and that the real purpose of the plaintiffs below was to delay and hinder the creditors of the .corporation in the collection of their ■ debts. The second count shows that the liabilities of the corporation exceed its assets; while the third count specifically asserts the necessity of resorting to the statutory liability of the stockholders for the payment of the corporate debts.
That the matter thus set forth, in the first count of the cross petition is connected with “the subject of the action,- is we think indisputable. That subject, is the corporate property. The whole of it, .not merely such parts thereof as had been pointed out by the petition, nor is it material in this respect whether the mode by which plaintiffs below sought to procure its application to the corporate liabilities, was one which a court of equity should adopt or not. It was enough if the petition gave the court jurisdiction over the property; if it accomplished thite end then the court should administer it according to the rights of those who might show title to share in its distribution. The pleading in controversy, after showing the party who filed it to be a creditor of the corporation disclosed assets of that concern, not mentioned in the petition.
*554 Now, the subject matter of the action being the entire assets of the insolvent corporation, it follows that a pleading which brings into the cause any part of those assets, of necessity is connected with such subject. It is true that the cross-petition does not disclose a cause of action upon which it could recover a several judgment against all or any one of the plaintiffs below. Section 5072, Revised Statutes, in defining a counterclaim seems to make the right of the defendant to recover a several judgment against the plaintiff, an essential characteristic thereof. Upon the peculiar languageemployed by that section to define a “counterclaim, ’ ’ an argument is founded in support of the contention of the plaintiff in error, which would narrow the equity powers of the courts of common pleas of the state to a degree seriously embarrassing their efficiency. If the position taken by plaintiff in error is well founded, the courts of the state would be precluded from listening to any claim asserted by a defendant, unless its character was such that the claimant would be entitled to a ‘£ several judgment ’ ’ against the plaintiff.
Section 5070, Revised Statutes, declares that an answer shall contain * * * “2 a statement of any new matter constituting a defense, counterclaim, or set off. ’ ’ * * * Section 5072 Revised Statutes, declares that a counterclaim must be one * * * “in favor of a defendant and against a plaintiff between whom a several judgment might be had in an action. ” * * * Prom the language of these two sections, alone, the contention of plaintiff in error is fairly plausible. But even if these two* sections stood alone, it is doubtful if such contention should prevail. It would defeat one well understood purpose of the code of civil'procedure, *555 which was to prevent multiplicity of actions, and would absolutely abrogate the former jurisdiction in equity by which those courts administered complete justice between all the parties to an action, defendants as well as plaintiffs, respecting the subject matter thereof. These two sections, however, do not stand alone. Section 5071, Revised Statutes, provides that “The defendant may set forth in his answer as many grounds of defense, counterclaims and set offs as he has, whether they are such as have been heretofore denominated legal or equitable, or both.” But it does not stop here; instead, it proceeds “he may claim therein, relief touching the matters in question in the petition against the plaintiff or any other defendants in the same action.” * * * “May claim therein relief.” * * * What is meant by “therein?” Manifestly his answer. Section 5311, Revised Statutes, provides that “judgment may be given for or against one or more of several plaintiffs, and for or against one or -more of several defendants; and by the judgment the court may determine the ultimate rights of the parties on either side as between themselves, and grant to the defendant any affirmative relief to which he is entitled.” These two sections, 5071 and 5311, Revised Statutes, are sufficient to show the broad principles upon which the code of civil procedure administers remedial justice; but there are many other provisions of this code scarcely less important in this connection. When all the provisions of the code of civil procedure are brought into view they clearly demonstrate a purpose to broaden the practice pertaining to the administration of justice as it existed before the code was adopted. Anterior to the adoption of the code of civil procedure, the practice in equity was to set- *556 tie and adjust the claims and rights of all parties before it, respecting the subject matter of an action. The practice in equity before code was adopted being more rational than that at law, may not have required the reforming hand of the codifiers to the extent that the latter did, and therefore may not have been so greatly affected by its provisions; but those provisions disclose no purpose to narrow the practice in the one class of proceedings, while it enlarged the practice respecting the other. And if some single provision of the code seems to produce that result it should yield to the other provisions that are found in accord with its manifest spirit- and purpose. We find nothing in the' code of civil procedure when considered as an entirety, that narrows the former power of a court of equity to fully adjudicate every question legitimately arising between the parties before it, respecting the subject matter of the action. The answer of the Farrell Foundry and Machine Company, in so far as it brought to the attention of the court, assets of the . corporation not before brought in was dealing with a matter clearly connected with the subject of the action. ■ Further still, if the cross-petition disclosed no additional assets, but simply asserted a right in the cross-petitioner to participate in the distribution of assets already in court, it showed a connection with the subject of the action. Whenever a party shows even a contingent right to property or a fund, which is the subject of an equitable action, he should be accorded a hearing for its protection. An unyielding principle of natural justice accords him this right.
The third cause of action in the cross petition invokes the action of the court respecting the stat *557 utory liability of stockholders of the corporation. While this statutory liability is not an asset of the corporation, it, nevertheless, is a fund provided by law for the payment of its debts. The court already has, or if not, may bring’ before it, the parties necessary to a complete adjustment of all rig’hts and liabilities g’rowing’ out of the transactions of the insolvent concern. It would be a g’rave reproach to the jurisprudence of the ag’e if under such circumstances, a court after exhausting’ the assets of the corporation, would decline to proceed further, and turn the parties out of court, only to gather them in again in a new action to determine questions so closely related to those it had already adjusted. The question, however, we think was settled in the case of Warner v. Callender, 20 Ohio St., 190, where this court held that, “A judgment creditor of an insolvent railroad corporation may join, in the same action, a claim to compel payment of unpaid subscriptions for stock, and a claim to enforce the individual liability of stockholders, for the satisfaction of his judgment.” If the plaintiff in an action may join these two causes of action in his petition, why may not a defendant do likewise in a cross-petition ? Where the substantial rights of parties are alike, their remedial rights should be equal without regard to their repective positions as plaintiff or defendant in the action. Nor was it necessary for the cross-petitioner to first recover a judgment against the corporation, for it had become insolvent and its assets seized by virtue of legal proceedings and in the custody of the court where they could be administered according to the respective rights of all parties in interest. Younglove v. Lime Co., 49 Ohio St., 663.

Judgment affirmed.